IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOSE BOHANERGEZ BENITEZ PINEDA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:25-cv-2337 (AJT-WBP) |
| KRISTI NOEM, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Before the Court is Jose Bohanergez Benitez Pineda's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking release from Immigration and Customs Enforcement ("ICE") custody that began on December 12, 2025 on the grounds that his ongoing detention violates the Immigration and Nationality Act (the "INA"), his constitutional due process rights, and the *Accardi* doctrine. After Respondents filed their initial opposition, Petitioner filed a consent motion to stay the proceedings pending the completion of a reasonable fear interview with respect to Mexico, which the Court granted on January 6, 2026. *See* [Doc. Nos. 9, 10]. Following the completion of that interview, which took place on January 8, 2026, [Doc. No. 11], Respondents filed an additional response to the Petition, [Doc. No. 12], to which Petitioner filed a Reply, [Doc. No. 16]. Upon consideration of the filings, and for the reasons stated below, the Petition is GRANTED.

## I.    BACKGROUND

Petitioner is a 35-year-old noncitizen who was born in Honduras but has no claim to citizenship or legal immigration status in any other country. [Doc. No. 1] ¶ 11. On August 19, 2016, an ICE officer encountered Petitioner at the Edgefield Federal Correctional Institute, where

Petitioner was serving time for criminal convictions unrelated to the present Petition, and determined that he unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer. [Doc. No. 8-1] ¶ 8. On March 6, 2017, Petitioner was taken into civil immigration custody in Fairfax, Virginia, and Petitioner was issued a Form I-851, Notice of Intent to Issue a Final Administrative Removal Order. *Id.* ¶ 9. Petitioner claimed fear of returning to Honduras and on March 30, 2017, Petitioner received a positive fear finding with respect to his removal to Honduras and DHS issued a Form I-863, Notice of Referral to Immigration Judge to initiate Withholding Only Proceedings. *Id.* ¶¶ 9–10. On or around May 17, 2017, Petitioner filed a Form I-589, Application for Asylum and Withholding or Removal requesting relief under the Convention Against Torture ("CAT"), which was denied twice by an immigration judge.[1] Based on those considerations, a removal order was issued on October 10, 2018, which became final on November 1, 2018, and on December 21, 2018, Petitioner was removed from the United States to Honduras. *Id.* ¶¶ 12–14.

On November 11, 2021, Petitioner was encountered by a Customs and Border Protection agent near Rio Grande, Texas and on August 18, 2022, Petitioner pled guilty to Illegal Re-Entry under 8. U.S.C. § 1326(a), § 1326(b)(2) and was sentenced to 20 months in prison. *Id.* ¶¶ 16–17. On April 12, 2023, DHS issued Petitioner a Form I-871, Notice of Decision to Reinstate Prior Order (issued on October 10, 2018) as Petitioner entered the United States without inspection after previously having been removed. *Id.* ¶ 18. Petitioner claimed fear of returning to Honduras and requested a Reasonable Fear Interview, and on May 2, 2023, Petitioner received a positive fear finding and DHS issued a Form I-863, Notice of Referral to Immigration Judge to initiate

---

[1] An immigration judge reconsidered the Petitioner's Form I-589 Application after the Board of Immigration Appeals ordered the case remanded for consideration of newly available evidence, and again denied Petitioner's Form I-589 Application after consideration of the new evidence. [Doc. No. 8-1] ¶¶ 12–13.

Withholding Only Proceedings. *Id.* ¶¶ 19–20. On May 8, 2023, Petitioner filed a Form I-589, Application for Asylum and Withholding or Removal, and on June 28, 2023, an Immigration Judge issued a decision, which became final on July 28, 2023, ordering the Petitioner removed from the United States and granting Petitioner Deferral of Removal to Honduras under the Convention Against Torture. *Id.* ¶¶ 21–24. Petitioner was released on an Order of Supervision on August 9, 2023, with which Petitioner has complied, including by reporting for his check-in appointments. [Doc. No. 1] ¶¶ 16–18.

On December 12, 2025, Petitioner reported to the ICE Washington Field Office for a scheduled ICE check-in, and was taken into custody. [Doc. No. 1] ¶ 20. On December 15, 2025, Petitioner's Order of Supervision was revoked by a "Field Office Director" at ICE. [Doc. No. 8-2]. On December 19, 2025, Petitioner was served notice of third country removal to Mexico. [Doc. No. 8-1] ¶ 27. On January 8, 2026, an asylum officer conducted a third country screening and determined that Petitioner did not establish that it was more likely than not that he would be persecuted or tortured in Mexico. [Doc. No. 12-1] ¶ 7. Respondents concede that Mexico has not yet determined "whether to accept Petitioner," [Doc. No. 8-1] ¶ 29, but that "ICE is actively working on Petitioner's removal from the United States to Mexico" and Respondents are prepared to send "Petitioner to a staging facility to effectuate Petitioner's removal to Mexico." [Doc. No. 12-1] ¶ 8.

## II. LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted).

## III.    DISCUSSION

Petitioner contends that (1) his detention violates the INA and his due process rights; (2) the revocation of his order of supervision violates the INA's implementing regulations and the *Accardi* doctrine; and (3) Petitioner's removal to a Mexico (a third-country not identified on his removal order) without Immigration Judge review of his fear claim violates both the INA's implementing regulations and Petitioner's due process rights. [Doc. No. 1].[2] In opposition, Respondents contend that this Court lacks jurisdiction to review Petitioner's claims, and that Petitioner's detention is lawful because it does not violate Section 1231 or *Zadvydas v. Davis*; that the revocation of Petitioner's Order of Supervision comports with the governing regulations; and that Petitioner is not entitled to Immigration Judge review of his negative fear determination of removal to Mexico. *See* [Doc. Nos. 8, 12].

A.    Jurisdiction

As an initial matter, the Court concludes that the Court retains jurisdiction over the Petition under 8 U.S.C. § 1252(g), which "applies only to three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (internal citations omitted). Petitioner is not challenging, as Respondents contend, the execution of his removal order, but instead the applicable statute and regulations and whether he is entitled to "IJ review of an asylum officer's negative reasonable fear determination." *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886, at *7 (D. Md. Oct. 7, 2025) (holding that petitioner's claims requesting immigration judge review of a negative third country screening

---

[2] Because the Court concludes that Respondents violated 8 C.F.R. § 241.4(*l*) in revoking Petitioner's Order of Supervision, the Court does not address Petitioner's due process claim under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*.

4

interview "does not challenge the execution of the 2006 removal order at issue, which does not authorize removal to Mexico"). The Fourth Circuit has held that § 1252(g) "does not apply to agency interpretations of statutes," as such "decisions do not fall into any of the three categories enumerated in § 1252(g)," including the execution of a removal order. *Bowrin v. INS*, 194 F.3d 483, 488 (4th Cir. 1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (Section 1252(g) is a "discretion-protecting provision" that "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion," that leaves undisturbed a District Court's "jurisdiction to decide a purely legal question that does not challenge the Attorney General's discretionary authority."). Therefore, § 1252(g) does not bar consideration of Petitioner's legal challenge.

Respondents further contend that the Court lacks "jurisdiction to order IJ review of the negative third country screening interview because this relief is not cognizable in this habeas proceeding." [Doc. No. 12] at 2. At the core of this habeas petition is Petitioner's challenge to the legality of his detention after the government unlawfully revoked Petitioner's order of supervision and designated a third country of removal with no opportunity for immigration judge review. As the Supreme Court has recognized, since Petitioner's challenge "necessarily impl[ies] the invalidity of [his] confinement and removal . . . [his] claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.").

Likewise, the Court declines to dismiss Petitioner's claims on the grounds that he is a member of the class in the *D.V.D.* litigation. In *D.V.D. v. U.S. Dep't of Homeland Sec.*, five noncitizens filed a class action for declaratory and injunctive relief against DHS and others for violating procedural due process by planning to remove noncitizens to a third country without first

5

providing notice and an opportunity to apply for protection from removal to that country. 778 F. Supp. 3d 355 (D. Mass. 2025). On April 18, 2025, the District Court of Massachusetts granted the plaintiffs' class certification and a preliminary injunction, requiring DHS to comply with certain procedures before initiating removal to a third country. *Id.* at 393–94. The class consists of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378. On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

There has been no final judgment on the merits in *D.V.D.* and there is thus no *res judicata* effect of any decision that prevents this Court's review of Petitioner's claims. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) (res judicata requires a "final judgment on the merits"). Petitioner also brings claims concerning his ongoing detention, the revocation of an order of supervision, and his removal to a third country under the due process clause, the INA, and the governing regulations that are substantively different than the claims at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to. *D.V.D.*, 778 F. Supp. 3d at 387–90. As other courts have concluded, "to dismiss Petitioner's claims for [] relief at this time would effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved." *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025); *Santamaria Orellana*, 2025 WL 2841886, at *11. Nor does the Supreme Court's stay of the district court's preliminary injunction change this Court's disposition

since, as other courts have observed, the Supreme Court has not offered any analysis of its stay, let alone opined on whether the stay was based on the merits or the procedural posture of the case. *Santamaria Orellana*, 2025 WL 2841886, at *11 ("[B]ased on the presently available guidance from the Supreme Court, there is an insufficient basis upon which to reach a conclusion on which aspects of *D.V.D.* the Supreme Court has rejected, whether they relate to the class certification, the due process claim, or otherwise."); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 731 (W.D. Wash. 2025) ("The Supreme Court did not decide *D.V.D.* on the merits, nor did it even necessarily rule on the class's likelihood of success on its due process and APA claims.").

Therefore, the Court declines to dismiss Petitioner's claims on the grounds that he is a member of the class in the *D.V.D.* litigation.

### B.  Revocation of Petitioner's Order of Supervision

On the merits, Petitioner claims that the revocation of his Order of Supervision violates the INA Regulations, 8 C.F.R. §§ 241.4(*l*), and the *Accardi* doctrine, which requires an agency to follow its own procedures and regulations. *See Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.").

The INA's implementing regulations provide that a noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). The government is required to notify the noncitizen of the "reasons for revocation of his or her release or parole" and afford the noncitizen "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Separately, the "Executive Associate Commissioner shall have authority, in the exercise of

7

discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section." *Id.* § 241.4(*l*)(2). And "[a] district director may also revoke release of [a noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.* Finally, if the noncitizen is not released from custody following the "informal interview" described above, the regulations provide for a "normal review process" of the custody determination within three months after release is revoked. *Id.* § 241.4(*l*)(3).

Here, Petitioner was detained on December 12, 2025, but Respondents did not formally revoke Petitioner's Order of Supervision until December 15, 2025, three days after Petitioner was detained, when it issued a "Notice of Revocation of Release" pursuant to 8 C.F.R. § 241.4(*l*). [Doc. No. 8-2] at 1. For this three-day period, Respondents failed to comply with 8 C.F.R. § 241.4(*l*)(1), which requires them to provide a notice stating the reasons for the revocation or release and an initial informal interview to afford the noncitizen to respond to the reasons for revocation.[3]

Putting aside issues about whether Respondents can retroactively comply with the regulations, the Court finds that the December 15, 2025 revocation is also deficient because it fails to make the required finding that the Executive Associate Commissioner could not be involved in the decision due to extenuating circumstances. *See* 8 C.F.R. § 241.4(*l*)(2) (authorizing district director to revoke release where "in the district director's opinion, revocation is in the public interest *and* circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner") (emphasis added). The December 15, 2025 revocation, signed by the field office director for the Washington Field Office, states that the decision to revoke Petitioner's order of

---

[3] Respondents appear to attempt a cure of this defect by submitting a "notice of revocation of release" that identifies neither a signatory, nor a date, and is thus clearly not compliant with INA's implementing regulations. [Doc. No. 8-2] at 2.

supervision was "based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case." [Doc. No. 8-2] at 1. No finding was provided as to why revocation of the order of supervision serves the public interest, why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner, as required by 8 C.F.R. § 241.4(*l*)(2), or what the changed circumstances were. As another Court in this Circuit has concluded, the requirement that a senior official "make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement" but instead "part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process." *Santamaria Orellana*, 2025 WL 2841886, at *5. Moreover, the December 15, 2025 revocation order states that Petitioner will be "promptly [] afforded an informal interview," [Doc. No. 8-2] at 1, but there is no indication on the record that any such informal interview pursuant to 8 C.F.R. § 241.4(*l*)(1) has taken place, or that the "normal review process," ordinarily to occur within three months after release is revoked, pursuant to 8 C.F.R. § 241.4(*l*)(3) has been initiated. Therefore, this Court concludes that the December 15, 2025 revocation was unlawful under the *Accardi* doctrine.

C.  <u>Reasonable Fear Interview</u>

In Count Five, Petitioner claims that he is entitled to immigration judge review of the asylum officer's negative fear determination of his removal to Mexico. [Doc. No. 1] at 15–16. Respondents submit that the regulations do not entitle Petitioner to review by an immigration judge of a negative finding regarding fear of being removed to a third-country not identified on the reinstated removal order. [Doc. No. 12] at 12–19. The Court has previously rejected Respondents position in *Juarez Villatro v. Noem*, where the Court ordered the government to afford immigration

judge review of the petitioner's removal to a third country not identified in the petitioner's removal order. Civ. No. 1:25-cv-2359, Dkt. No. 17, Order (E.D. Va. Jan. 6, 2026) (Trenga, J.).

The INA designates the following countries as possible places to which an alien can be removed: (i) the country of which the alien is a citizen, subject, or national; (ii) the country in which the alien was born; (iii) the country in which the alien has a residence; (iv) a country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible. 8 U.S.C. § 1231(b). And "the Secretary retains discretion to remove an alien to any country described" in the INA." 8 C.F.R. § 241.15(a). On March 30, 2025, the Secretary of Homeland Security issued a memorandum entitled "Guidance Regarding Third Country Removals," in which she outlined the procedures the agency would follow for removal of noncitizens with a final order of removal to third countries.[4] [Doc. No. 12-2].

Under the INA's implementing regulations, noncitizens, under certain circumstances, are entitled to credible fear or reasonable fear screenings. 8 C.F.R. §§ 208.30(a), 208.31(a). Both parties agree that Petitioner is not entitled to a credible fear screening under 8 C.F.R. § 208.30(a), which applies only to (a) arriving noncitizens who are in expedited removal proceedings under 8 U.S.C. § 1225(b)(1); and (b) noncitizen stowaways under 8 U.S.C. § 1225(a)(2). *See* 8 C.F.R. § 208.30(a). Rather, Petitioner claims he is entitled to a reasonable fear screening and immigration judge review under the rationale provided in 8 C.F.R. § 208.31, which provides for immigration

---

[4] The memorandum does not reference any review by an immigration judge and provides, in relevant part, that "[i]n cases where the [noncitizen] affirmatively states a fear, USCIS will generally screen the alien within 24 hours of referral from the immigration officer. . . . USCIS will determine whether the [noncitizen] would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal. If USCIS determines that the [noncitizen] has not met this standard, the [noncitizen] will be removed." [Doc. No. 12-2] at 2.

10

judge review of an asylum office's negative determination of reasonable fear, either through referral by a USCIS asylum officer or at the noncitizen's request, 8 C.F.R. §§ 208.31(a), (e)-(g).

8 C.F.R. § 208.31, under its plain terms, applies to the expedited removal of noncitizens convicted of committing aggravated felonies (8 U.S.C. § 1228(b)) and those that have a reinstated removal order (8 U.S.C. § 1231(a)(5)). 8 C.F.R. § 1208.31(a). Petitioner is not being removed under 8 U.S.C. § 1228(b), which applies to noncitizens who were convicted of an aggravated felony. But Petitioner is subject to a *reinstated* order of removal within the meaning of 8 C.F.R. § 208.31 since, as the government concedes, it issued on April 12, 2023 a Form I-871 Notice of Decision to Reinstate Prior Order, which under 8 U.S.C. § 1231(a)(5) would reinstate Petitioner's October 10, 2018 removal order. Moreover, even if Petitioner is deemed being removed pursuant to a new June 28, 2023 removal order, rather than a reinstated October 10, 2018 removal order such that 8 C.F.R. § 208.31 may not directly govern Petitioner's case, the Court concludes he is entitled to Immigration Judge of the asylum officer's negative fear determination with respect to removal to Mexico as a matter of procedural due process.

"The procedural component of due process 'imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause.'" *D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016), *quoting Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "And when the government deprives a person of a protected liberty or property interest, it is obliged to provide 'notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 741–42. As to how much process an individual is constitutionally entitled to, courts apply the familiar *Mathews v. Eldridge* framework that assesses (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

11

procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner's private interest to not be removed to a third country where he would face persecution is clearly significant and "is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under § 1231(b)(3) or the Convention Against Torture receive such protection." *Cruz Medina v. Noem*, No. 25-CV-1768-ABA, 2025 WL 2841488, at *6 (D. Md. Oct. 7, 2025) (collecting cases).

The risk of erroneous deprivation is also undoubtedly high since Petitioner's negative credible fear determination made by a single asylum officer was issued without explanation, raising questions as to whether Petitioner was given a meaningful opportunity to be heard, the very cornerstone of procedural due process. *United States v. Timms*, 664 F.3d 436, 450 (4th Cir. 2012). As the *Cruz Medina* court observed, "[t]he Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation." *Cruz Medina*, 2025 WL 2841488, at *7 (reviewing numerous examples in the regulations where noncitizens, including those that are subject to expedited removal proceedings, or noncitizens that entered the country illegally after having previously been removed are entitled to de novo review by an immigration judge). Indeed, there is no dispute that if Respondents had identified Mexico as a place for removal (in addition to Honduras) during Petitioner's removal proceedings, Petitioner would have been entitled to immigration judge review of his claim of fear of removal to Mexico. The fact that Petitioner may not technically satisfy the

12

criteria for mandatory immigration judge review under any of these regulations simply because he is not subject to expedited removal or the reinstatement of a prior removal order does not make the risk of erroneous deprivation any less grave. *See id.* (deferring to "DHS's own longstanding determination that similar circumstances call for providing IJ review to lessen the risk of erroneous deprivation of relief under the withholding statute or the Convention Against Torture.").

Respondents suggest that IJ review remains available to Petitioner because he may file a motion to reopen his removal proceedings. [Doc. No. 12] at 1, 18, 23. But as Petitioners lay out, Petitioner is barred from reopening his reinstated removal order as he reentered the United States illegally in 2021 following his 2018 removal. *See* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date *and is not subject to being reopened or reviewed*[.]") (emphasis added). Moreover, "[s]imply allowing the petitioner to move to reopen their immigration proceedings is not enough to satisfy Due Process—the Government must actually reopen proceedings so that the petitioner has a fair and adequate opportunity to be heard." *Arenado-Borges v. Bondi*, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025).

As to the third *Mathews* prong, Respondents' burden of affording IJ review of Petitioner's negative fear determination is minimal, particularly, as discussed above, where the regulations provide such review in several other contexts. Indeed, the Fourth Circuit has recognized that a "reasonable fear review hearing before an IJ is not as comprehensive or in-depth as a withholding of removal hearing, but is instead a review of the asylum officer's decision." *Tomas-Ramos v. Garland*, 24 F.4th 973, 978 (4th Cir. 2022) (cleaned up). Nor does the Court find there to be any separation of powers concerns since, as other courts have noted, "[i]mmigration judge review of

13

the negative fear determination would necessarily occur within the Executive branch, and the Court here does not weigh in on the probability of whether [Petitioner] will be persecuted or tortured in Mexico. *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *12 (D. Md. Jan. 9, 2026). In sum, Petitioner is entitled as a matter of procedural to process to immigration judge review of his negative fear determination as described in the regulations governing the analogous context. 8 C.F.R. §§ 208.31, 1208.31.

## IV.    CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Petition be, and the same hereby is, GRANTED; and it is further

**ORDERED** that Petitioner be RELEASED from custody immediately subject to his August 9, 2023 Order of Supervision, which may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4; and it is further

**ORDERED** that if Petitioner is again detained in compliance with the applicable regulations, Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from removing Petitioner from this judicial district and the continental United States unless (1) he has first received review by an immigration judge, pursuant to 8 C.F.R. § 208.31(g), of the United States Citizenship and Immigration Services asylum officer's negative decision regarding whether he has a reasonable fear of persecution or torture if removed to Mexico; and (2) all other requirements of 8 C.F.R. § 208.31(g) have been satisfied.

The Clerk is directed to send this Order to all counsel of the record.

March 2, 2026
Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge

14